**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **JAN. 23, 2009**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY: s/ Ronnie Plasner, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

**In Re:**
**STEEL WHEELS TRANSPORT, LLC**
**and TEAM G LOADING, LLC**,

              Debtors.

Case Nos.:   06-15377 (DHS) **(Lead)**
06-15378 (DHS)

Administratively Consolidated

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Trenk, DiPasquale, Webster, Della Fera & Sodono, P.C.
Shoshana Schiff, Esq.
347 Mount Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
*Counsel for Joseph J. Newman, Chapter 7 Trustee for*
*Steel Wheels Transport, LLC and Team G Loading, LLC*


Abraham Borenstein & Associates
Abraham Borenstein, Esq.
155 Morris Avenue
Springfield, New Jersey 07081
*Counsel for Isaac Tyberg and Morris Tyberg*


Teich Groh
Brian Hofmeister, Esq.
691 State Highway 33
Trenton, New Jersey 08619-4492
*Counsel for Steel Wheels, LLC*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the first omnibus objection seeking to expunge and fix claims pursuant to Section 502 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3007 filed by Joseph J. Newman, Chapter 7 Trustee ("Trustee") for Steel Wheels Transport, LLC ("Steel Wheels") and Team G Loading, LLC ("Team G") (hereinafter collectively referred to as "Debtors"). All claims at issue in the motion to which the Trustee objects have been resolved or fixed with the exception of Steel Wheels, LLC ("SWLLC"). Specifically, the Trustee requests the expungement of claim number 3 for $48,922.69 and claim number 18, which amends number 3, for $111,969.92 filed by SWLLC. The Debtors leased railroad cars from SWLLC and, despite the similar name, the Debtors and SWLLC are unaffiliated entities. The Court held an evidentiary hearing and took testimony from SWLLC's chief manager and chief financial manager with respect to the lease agreements with the Debtors.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, and the December 5, 2005 Order of Reference from the United States District Court for the District of New Jersey. As this matter concerns the administration of the bankruptcy estate, it constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B). Venue is proper under 28 U.S.C. §§ 1408 and 1409. For the reasons that follow, the Trustee's motion to expunge SWLLC's claims is granted.

**Statement of Facts and Procedural History**

**I.    Background**

The Debtors filed separate voluntary Chapter 11 cases on June 14, 2006. *See Verified Application in Support of First Omnibus Objection of Joseph J. Newman, Chapter 7 Trustee, Seeking Entry of an Order Expunging and Fixing Claims Pursuant to 11 U.S.C. § 502 and Fed. R. Bankr. P. 3007 ("Tr. Obj.")* at ¶ 5. Issac Tyberg is the Managing Member of the Debtors and a fifty percent (50%) shareholder of both. Morris Tyberg is also a fifty percent (50%) shareholder of both Debtors. *Id.* at ¶¶ 6-7.

On August 17, 2006, the Court entered an Order dismissing the Chapter 11 cases ("Dismissal Order") conditioned upon the following: (i) that the Debtors' assets be sold to Chartwell International, Inc. and/or its wholly owned companies, affiliates or subsidiaries ("Chartwell") for $1,250,000.00 with the proceeds to be deposited in the trust account of James S. Weiss, Esq., Debtors' counsel at that time; (ii) that $791,000.00 be escrowed by Weiss and/or paid to specified creditors outlined in the Dismissal Order; and (iii) that within six (6) months of the closing, Weiss file a report detailing the distributions made and the resolutions reached on claims as set forth in the Dismissal Order. *See id.* at ¶ 11; *Order Dismissing Chapter 11 Cases and Granting Other Relief ("Dismissal Order")* at ¶ 1A-1C. The Dismissal Order further provided that "Chartwell shall pay in full or assume the claims stemming from the Debtors' commercial leases and/or financing arrangements with, *inter alia*, Steelwheels, LLC." *See Dismissal Order* at ¶ 4; *Tr. Obj.* at ¶ 12.

Due to Weiss's failure to file the required distribution report, the United States Trustee sought to reopen the Debtors' Chapter 11 cases to compel an accounting of the resolution of claims and the disposition of proceeds from the sale. *See Tr. Obj.* at ¶ 14. Thereafter, the distribution report

was filed and the United States Trustee's motion to convert was granted by the Court on November 13, 2007. *See Tr. Obj.* at ¶17. That same day, Joseph J. Newman was appointed as Chapter 7 Trustee. *See id.* at ¶ 18. The cases were subsequently administratively consolidated pursuant to Federal Rule of Bankruptcy Procedure 1015 on December 19, 2007. *Id.* at ¶ 20. On September 19, 2008, the Debtors' cases were also substantively consolidated.

## II.    SWLLC's Claims

SWLLC and Steel Wheels Transport, LLC entered into a five-year railroad car lease on February 16, 2005 for sixty (60) woodchip gondolas at $575.00 per month per car. *See Objection to Trustee's Settlement filed by SWLLC* at Exhibit A. Subsequently, the parties entered into a second lease on July 28, 2005 for an additional twenty-three (23) cars at the same rate. *Id.* On June 14, 2006, the Petition was filed and on July 13, 2006, SWLLC filed its proof of secured claim for $49,922.69. *See Proof of Claim No. 3.* Thereafter, the Debtors' assets were sold to Chartwell and its affiliates pursuant to the Dismissal Order.

On August 24, 2006, after the Dismissal Order was entered, the Debtors and Hudson Logistics, Inc. ("HLI") and Hudson Logistics Loading, Inc. ("HLL") (HLI and HLL are hereinafter collectively referred to as "Hudson Logistics")[1] entered into an Assignment, Assumption, and Novation Agreement ("Assignment Agreement") whereby Hudson Logistics agreed to assume equipment and rail car leases including those of SWLLC for the eighty-three (83) cars. *See Tr. Obj.* at Exhibit A.  The Assignment Agreement states in section 1.61:

> In the event that HLI and/or HLL are permitted to assume the Leases by the individual lessors, (i) Steel Wheels hereby agrees to the assignment, transfer, and conveyance to HLI and/or HLL all of Steel

---

[1] Hudson Logistics are subsidiaries of Chartwell. *See Dismissal Order* at ¶ 1A.

5

> Wheel's rights, title, and interest in, to and under the Leases, (ii) HLI and/or HLL unconditionally assumes and shall promptly, fully, completely and faithfully keep, fulfill, observe, perform and discharge each and every covenant and obligation that may become performable under the Leases, and (iii) HLI and/or HLL shall be bound by all of the terms and conditions of the Leases.

*Id.* Furthermore, section 5 of the Assignment Agreement provides for mutual releases "from any and all claims" between the Debtors and the Chartwell entities including Hudson Logistics. *Id.*

On December 1, 2006, SWLLC and Hudson Logistics entered into a new Railroad Car Lease Agreement ("2006 Agreement") where the parties agreed to terminate the original railroad car leases executed in February and July 2005 between SWLLC and Steel Wheels and to terminate the Assignment Agreement. *See Supplemental Verified Application in Further Support of First Omnibus Objection of Joseph H. Newman, Chapter 7 Trustee ("Supp. Tr. Obj.")*, at ¶ 8, Exhibit A. Under the 2006 Agreement, SWLLC, as the Lessor, agreed to a release with Hudson Logistics, as the Lessee, which provides in relevant part:

> Lessor [SWLCC] together with its respective directors,. . . affiliates,. . .do hereby release, acquit and fully and forever discharge Lessee of and from any and all actions, causes of action, accounts, agreements, attorneys' fees,. . . claims, damages,. . . whether known or unknown, contingent or fixed, in law, admiralty or equity, which Lessor now has or ever had against Lessee from the beginning of the world to November 30, 2006, that relate to or arise out of the Prior Agreement[2] or the Assignment Agreement, provided that any obligations created by or set forth in this Agreement shall not be released.

*See Supp. Tr. Obj.* at ¶ 9, Exhibit A. In addition, as consideration for the termination and releases under the 2006 Agreement, Hudson Logistics was to pay SWLLC fifty thousand dollars ($50,000).

---

[2]Prior Agreement is the term used to describe the February 2005 and July 2005 Railroad Car Lease Agreements in the New Railroad Car Lease Agreement of December 2006.

*See Supp. Tr. Obj.* at ¶ 10, Exhibit A. The Trustee submits that upon information and belief, such consideration was paid by Hudson Logistics or Chartwell to SWLLC.

On March 5, 2008, SWLLC filed another secured proof of claim for $111,969.92, which purported to amend Proof of Claim Number Three. *See Proof of Claim No. 18.* On April 15, 2008, SWLLC filed Amended Proofs of Claim for the same values as Proofs of Claim Numbers Three and Eighteen and reclassified the claims to unsecured non-priority claims. *See Proofs of Claim Nos. 22 & 23; Supp. Tr. Obj.* at ¶ 12. Simultaneously, counsel for SWLLC filed an objection to a pending motion to approve a settlement between the Trustee and the Tybergs. *See Supp. Tr. Obj.* ¶ 14. Thereafter, SWLLC filed an objection to the Trustee's instant claims motion stating that "[w]hile the [Dismissal] Order of this Court might have included an assumption by Chartwell of the obligations that the [D]ebtor had to Steel Wheels LLC, those obligations have not been paid by Chartwell and the monies due and owing still remain unpaid." *See SWLLC's Letter in Opposition to the Trustee's Motion to Expunge Claims ("SWLLC's Opposition")* at 1. SWLLC contends that while Chartwell may have obligations to it, the Debtors' primary obligation still remains and thus the claims should not be expunged. *Id.* at 1-2.

On May 21, 2008, Imre Eszenyi, Chief Executive Officer of Chartwell, provided Trustee's counsel with a copy of the 2006 Agreement *See id.* at ¶ 18. Following unsuccessful settlement discussions, on July 23, 2008, the Trustee submitted a supplemental application in support of the instant claims objection arguing that the doctrines of novation, release, and accord and satisfaction bar SWLLC's claim due to the parties' entry into the December 2006 New Railroad Car Lease Agreement. Additionally, the Trustee sought the imposition of sanctions including attorneys' fees for filing proofs of claim deemed to be erroneous pursuant to Bankruptcy Code Section 105(a) or

7

Bankruptcy Rule 9011. The Court determined that a hearing was necessary to resolve the issue of interpreting the release language in the 2006 Agreement, the Dismissal Order, and the subsequent Assignment Agreement. After the evidentiary hearing on August 12, 2008, where Timothy Eklund, chief manager and chief financial manager of SWLLC, testified, the Court accepted post-hearing submissions from the Trustee and from SWLLC as to the parol evidence rule.

## Discussion

### I.  Determination of Disputed Claims

Section 502 of the Bankruptcy Code provides for the allowance of claims or interests with subsection (a) stating: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest. . .objects." 11 U.S.C. § 502(a) (2008). A properly filed proof of claim constitutes *prima facie* evidence of a claim's validity and amount. *See id.*; FED. R. BANKR. P. 3001(f). An objecting party, in this case the Trustee, has the burden of providing evidence to demonstrate the claim's invalidity and to rebut the *prima facie* case. *See In re Rabzak*, 79 B.R. 960, 963 (Bankr. E.D. Pa. 1987) (citations omitted). If the claim is rebutted, the ultimate burden of persuasion remains with the creditor to prove that the claim is valid by a preponderance of the evidence. *See In re Allegheny Int'l,* Inc., 954 F.2d 167, 173-74 (3d Cir. 1992); *id.* (citation omitted). The claims at issue here are based upon financing agreements entered into by the parties and their successors. Such documentation was attached to the proofs of claim and instant motion. SWLLC, as the creditor, carries the ultimate burden of persuasion to prove its claim since the Trustee rebutted the *prima facie* case.

**II.    Parol Evidence Rule**

The Trustee contends that the testimony of SWLLC's chief financial manager Timothy Eklund is barred by the parol evidence rule because the writings at issue are full and final expressions of the parties' agreements. SWLLC counters that the releases included in the 2006 Agreement are ambiguous thereby requiring the Court to consider the oral testimony to determine the parties' intentions.

The underlying agreements herein contain choice of law clauses: the Assignment Agreement is governed by the laws of the State of New Jersey while the December 2006 New Railroad Car Lease Agreement is governed by the laws of the State of Minnesota. *See Tr. Obj.,* Exhibit A; *Supp. Tr. Obj.,* Exhibit A. Both New Jersey and Minnesota's state statutes contain Section 2-202 of the Uniform Commercial Code which encompasses the parol evidence rule. *See* MINN. STAT. § 336.2-202 (2007); N.J. STAT. ANN. § 12A:2-202 (2008). Both sections provide:

> Terms with respect to which the confirmatory memoranda of the parties agree of which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> > (a) by course of dealing or usage of trade or by course of performance; and
>
> > (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

MINN. STAT. § 336.2-202 (2007); N.J. STAT. ANN. § 12A:2-202 (2008).

Contrary to its name, the parol evidence rule is a rule of substantive law, not evidentiary. *See Conway v.287 Corp. Ctr. Assocs.*, 187 N.J. 259, 268 (2006); *Lehman v. Stout*, 261 Minn. 384, 390

(1961). Minnesota case law adopted the view that extrinsic evidence of prior oral or written agreements is inadmissible when the parties have agreed to a written contract which is unambiguous and integrated. *See Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 312 (Minn. 2003); *Lehman*, 261 Minn. at 390. New Jersey takes a more expansive view that parol evidence may be considered to aid in the determination of the meaning and intent of the contract terms, but may not contradict or vary such terms. *See Conway*, 187 N.J. at 269; *Atl. N. Airlines, Inc. v. Schwimmer*, 12 N.J. 293, 302 (1953).

An integration or merger clause relates to the parol evidence rule in that it provides evidence that the parties intended the writing to be a complete agreement encompassing all prior agreements and signifies that no other agreements exist. *See Harbour Cove Marine Servs., Inc. v. Rabinowitz*, 2005 U.S. Dist. LEXIS 36794, at *8 (D.N.J. Aug. 29, 2005); *Alpha Real Estate*, 664 N.W.2d at 312-13. In the instant matter, the 2006 Agreement is the document upon which the parties' dispute is based. That document expressly provides for an integration or merger clause at Section 12(f) stating: "This Agreement sets forth the entire agreement between the parties and supersedes any prior and contemporaneous agreements whether oral or written between the parties concerning its subject matter." *Supp. Tr. Obj.* at Exhibit A. Thus, the 2006 Agreement is the full and final written expression of the agreement between SWLLC and Hudson Logistics as evidenced by the integration clause. However, it is important to note that the integration clause alone does not change the determination of whether ambiguous language exists. *See Harbour Cove Marine Servs.*, 2005 U.S. Dist. LEXIS 36794, at *9. The integration clause serves as evidence that the parties' intentions are encompassed within the four corners of the written agreement and any modification must be in a subsequent executed writing. *See Alpha Real Estate*, 664 N.W.2d at 313.

The parties' dispute is centered around the release language contained in the 2006 Agreement. SWLLC contends that the extent of the release located in Section One is ambiguous and argues that the fact that there is a dispute over the release language is evidence of the inherent ambiguity. However, SWLLC appears to have created the ambiguity by submitting an interpretation different from the plain reading of the contract. Instead, principles of contract interpretation, which this Court embraces, require a reading within the four corners of the contract. Only upon the determination of the Court that an ambiguity exists would parol evidence become admissible. Here, the language of the release and of the merger clause is clear and unambiguous. *See Harbour Cove Marine Servs.*, 2005 U.S. Dist. LEXIS 36794, at *8-9 ("When the terms of the contract are clear and unambiguous, the Court is without power to do anything but enforce those terms.") (citing *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001)); *Alpha Real Estate Co.*, 664 N.W.2d at 314 ("We conclude that the. . .lease is a complete integration and represents the complete and exclusive statement of the terms of the agreement between the parties and is unambiguous. Therefore, it was error to consider extrinsic evidence. . . .").

Moreover, this Court finds that the parties are sophisticated and knowingly negotiated and entered into the December 2006 Agreement. If SWLLC intended to only release Chartwell's rental obligations then it should and would have included such language in the Agreement. However, the language of the 2006 Agreement clearly releases *any and all claims* between Hudson Logistics, as a subsidiary of Chartwell, and SWLLC. (emphasis added) The Court will not go behind the precise terms of the contract when they are clear on its face. Thus, the Court hereby applies the parol evidence rule and finds that the testimony of Timothy Eklund is inadmissible relative to the determination of the motion to expunge the claims of SWLLC.

### III. Novation, Release and Accord and Satisfaction

Since the Court has concluded that the parol evidence rule is applicable, it must now make a determination as to the instant motion to expunge the claims of SWLLC. The Trustee contends that SWLLC's claim must be expunged based upon the doctrines of release, novation, and accord and satisfaction as applied to the 2006 Agreement. As stated above, the 2006 Agreement is governed by Minnesota law while the underlying Assignment Agreement is governed by New Jersey law.

#### A. Release

The 2006 Agreement specifically contains release language whereby all claims and obligations arising out of the original lease and subsequent Assignment Agreement between Hudson Logistics and SWLLC are discharged. "A release or covenant not to sue is an agreement not to enforce an existing cause of action against the party to the agreement." *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 562 (Minn. 1995); *Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997) (citing RESTATEMENT (SECOND) OF CONTRACTS § 284) ("A release is a writing which provides that a duty owed to the maker of a release is discharged immediately or upon the occurrence of a condition.") "As with any contract, a release requires consideration, voluntariness, and contractual capacity." *Id; Stanley Trucking Co. v. Nat'l Indemnity Co.*, 271 Minn. 311, 314 (1965); *see Scott v. Mayflower Home Improvement Corp.*, 363 N.J. Super. 145, 166 (Law Div. 2001). The consideration here is Hudson Logistics' payment of $50,000.00 to SWLLC in exchange for the release of liability on claims between the parties. Thus, the release in question is valid, enforceable, and clear in indicating that the parties absolved each other of liability.

B.   **Novation**

Under Minnesota law, a novation "extinguishes the original debt or obligation against the original debtor, and shifts the debt, by mutual agreement, to a new party. A proper novation thus requires both mutual agreement and consideration."*Albany Roller Mills, Inc. v. N. United Feeds and Seeds, Inc.*, 397 N.W.2d 430, 433 (Minn. 1986) (citing *Hanson v. Nelson*, 82 Minn. 220, 221-222 (1901)). New Jersey law provides:

> [W]hen a lease is assigned by the lessee, the assignee becomes the principal obligor for the payment of the rent thereafter accruing and the future performance of the covenants, and the lessee assumes the position of surety toward the lessor. Nevertheless, a lessee is discharged from liability that accrues from an assigned lease when the lessor enters into a direct leasing arrangement with the assignee which effectively establishes a new tenancy relationship while terminating the old. . . .

*Aldrich Nine Assocs. v. Foot Locker Specialty, Inc.*, 2005 WL 3005715 at *2 (N.J. Super. App. Div. 2005) (citations and quotation marks omitted) (unpublished opinion); *see One Carol Place Co., L.L.C. v. Melnor, L.L.C.*, 1998 U.S. Dist. LEXIS 5771 at *47-48 (D.N.J. April 23, 1998). Thus, upon entrance into the 2006 Agreement by Hudson Logistics and SWLLC, the Debtors' liability to SWLLC was extinguished for payment on the gondolas.

C.   **Accord and Satisfaction**

"The purpose of accord and satisfaction is to allow parties to resolve disputes without judicial intervention by discharging all rights and duties under a contract in exchange for a stated performance, usually a payment of a sum of money." *Nelson v. Am. Family Ins. Group*, 651 N.W.2d 499, 512 (Minn. 2002). An accord is "a contract in which a debtor offers a sum of money. . .in exchange for which a creditor promises to accept performance in lieu of the original debt." *Id.* (citing *Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.* 617 N.W.2d 67, 72 (Minn. 2002)).

A satisfaction "is the performance of the accord, generally acceptance of money, which operates to discharge the debtor's duty as agreed to in the accord." *Id.* To be an enforceable accord and satisfaction, a showing of the following is required:

> (1) the party, in good faith, tendered an instrument to the claimant as full satisfaction of the claim; (2) the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim; (3) the amount of the claim was unliquidated or subject to a bona fide dispute; and (4) the claimant obtained payment of the instrument.

*Id.* (citing *Webb Bus. Promotions*, 617 N.W.2d at 73); *see Loizeaux Builders Supply Co. v. Donald B. Ludwig, Co.*, 144 N.J. Super. 556, 564-65 (Law Div. 1976).

In the instant matter, an instrument was tendered, the amount of the claim was disputed, and the $50,000.00 transfer was to take place upon execution of the agreement. Furthermore, an exchange of $50,000.00 for release of liability was included in the first section of the 2006 Agreement specifically stating: "In consideration for the termination and releases as provided in this Section 1, Lessee will pay to Lessor sum of Fifty Thousand Dollars ($50,000). . . ." which satisfies the conspicuous statement requirement. Lastly, the $50,000.00 was paid to the claimant. Therefore, the accord and satisfaction are enforceable.

**IV.    Sanctions and Attorneys' Fees**

The Trustee seeks sanctions for the prosecution of the instant dispute involving these claims arguing that the filing of the claims was fraudulent and unwarranted. At the time SWLLC filed its proof of claims, the lease obligations due and owing under the Original Lease Agreement with the Debtors remained unpaid. Thus, SWLLC alleges it became a creditor with the right to file a proof of claim. The Dismissal Order that eventually was entered into by the parties sold the Debtors' assets

to Chartwell and Chartwell assumed liability for the lease through both the Assignment Agreement and subsequent 2006 Agreement. Due to the complex and arduous history of this case, including the dispute of SWLLC's claims, extensive work and preparation by all counsel was necessary in order to reach a resolution. Thus, although this Court has determined that the law requires the expungement of SWLLC's claims, the Court will not impose sanctions and award attorneys' fees to the Trustee pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9011.

## **Conclusion**

For the foregoing reasons, the claims of SWLLC are hereby expunged and the Trustee's request for imposition of sanctions and award of attorneys' fees is hereby denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

*/s/ Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: January 23, 2009